{¶ 49} While I concur in the manner in which the majority disposed of the first assignment of error, I respectfully dissent from the majority's resolution of Blevins' second assignment of error. While a proper anticipatory search warrant might have been issued under these unusual circumstances, I would find that the language of the warrant was insufficient to properly guarantee that the triggering event would occur. I would further find that the triggering event did not occur and that the search of 503 Evans Road cannot be saved based upon the "good faith exception" to the exclusionary rule set forth in United States v.Leon (1984), 468 U.S. 897, and adopted by the Ohio Supreme Court inState v. Wilmoth (1986), 22 Ohio St.3d 251, and State v. George (1989),45 Ohio St.3d 325. There were substantial inconsistencies between what was agreed to by the judge and Detective Isom, and what was stated in the warrant. I am especially troubled that the language of the anticipatory search warrant, which was written by the police,[2] does not mirror what the judge stated during the hearing on the anticipatory warrant.
 {¶ 50} As noted above, according to the anticipatory search warrant, the police were authorized to execute the search warrant on 503 Evans Road "only on completion of a delivery of crack cocaine or powder cocaine from Jeremy Blevins AND/OR an occupant of 503 Evans Road * * *." (Emphasis added). However, *Page 25 
during the hearing on the anticipatory search warrant, the judge confirmed with Detective Isom that the completed delivery would be accomplished by having the confidential informant arrange the buy and delivery of crack cocaine from Blevins to the informant.
 {¶ 51} During his sworn testimony, the following exchange took place between the judge and Detective Isom:
 Judge: Okay. Okay, with regard to this 503 Evans Road, do you, just so I am clear on this, you have a plan where the informant is going to be making a buy, or making some kind of order? Okay. And that's what is going to bring you about with the knowledge that that is moving in the vehicle? Detective Isom: Yes, Ma'm. Judge: Okay.
 Detective Isom: From that residence.
 {¶ 52} In U.S. v. Grubbs (2006), 547 U.S. 90, 126 S.Ct. 1494, the United States Supreme Court discussed the requirements for a constitutionally valid anticipatory search warrant. Specifically, the Supreme Court provided:
 It should be noted, however, that where the anticipatory warrant places a condition (other than the mere passage of time) upon its execution, the first of these determinations goes not merely to what will probably be found if the condition is met. (If that were the extent of the probability determination, an anticipatory warrant could be issued for every house in the country, authorizing search and seizure if contraband should be delivered — though for any single location there is no likelihood that contraband will be delivered.) Rather, the probability determination for a conditioned anticipatory warrant looks also to the likelihood that the condition will occur, and thus that a proper object of seizure will be on the described premises. In other words, for a conditioned anticipatory warrant to comply *Page 26 with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied. It must be true not only that if the triggering condition occurs "there is a fair probability that contraband or evidence of a crime will be found in a particular place," [Illinois v.] Gates [(1983), 462 U.S. 213, 238], but also that there is probable cause to believe the triggering condition will occur . The supporting affidavit must provide the magistrate with sufficient information to evaluate both aspects of the probable-cause determination. See [United States v.] Garcia [(C.A.2 1989), 882 F.2d 699, 703].
Id. at 1500 (emphasis in original). I would sustain Blevins' assignment of error because the anticipatory warrant failed to include language sufficient to provide there was probable cause to believe the triggering condition would occur. The warrant should have required that the confidential informant contact Blevins and set up a controlled buy. Further, the warrant should have specified that the delivery must be by Blevins and to the confidential informant. Instead, the anticipatory search warrant indicates that "You are commanded that this search may be executed only on completion of a delivery of crack cocaine or powder cocaine from Jeremy Blevins AND/OR an occupant of 503 Evans Road * * *." While the police expected to be able to stop Blevins' vehicle because they knew Blevins' license was under suspension, there was no explanation of how they might be authorized to stop a vehicle driven by someone else leaving Blevins' residence. Obviously, only after a controlled buy would they have sufficient probable cause to stop some other person. They must first have confirmed a completed delivery. *Page 27 
 {¶ 53} The requirement that the controlled buy be completed as a result of contact from the confidential informant and a completed delivery by Blevins would be consistent with People v. Sousa (1993), 18 Cal.App.4th 549, 22 Cal.Rptr.2d 264, and State v. Gutman
(Alaska Ct.App. 1983), 670 P.2d 1166. Lacking those requirements, the warrant was grossly inadequate and gave the police the discretion to stop any vehicle leaving 503 Evans Road, with any driver/occupant, without regard to whether or not a delivery of illegal drugs was in process, and prior to a completed delivery.
 {¶ 54} I would further find that the triggering event, to the extent that it was described or specified, never occurred, because there was no completed delivery. The trial court stated in its entry:
 [i]t is this Court's opinion that once the Defendant exited his house at 503 Evans Road and entered his vehicle, he was commencing the process of a "delivery". This Court, therefore, finds that the triggering event of the anticipatory search warrant was met when officers observed Defendant Blevins commencing the delivery process.
(April 2006 Judgment Entry, pp. 4-5). This is not at all consistent with the requirements of the warrant. For the triggering event to occur, the police actually needed to witness the "completion of a delivery" of cocaine before they could search 503 Evans Road.
 {¶ 55} Upon a careful review of the record in this case, the police never actually witnessed a completed delivery before they stopped Blevins' vehicle. *Page 28 
Major Bill Collins of the Marion Police Department testified that prior to being stopped, Blevins was the vehicle's only occupant. Patrolman Cory Winfield, a police officer with the Marion Police Department, testified that within a couple of seconds after Blevins turned into the parking lot where he was stopped, he pulled up in front of Blevins, did not see anyone in the vehicle with Blevins, was unable to see whether somebody was getting into Blevins' vehicle, and did not actually see Ross get into the vehicle.
 {¶ 56} Because the police never witnessed Blevins complete a delivery, the search of 503 Evans Road can only be saved by the good faith exception. However, for the good faith exception to apply, the police officers needed to act in objectively reasonable reliance on the anticipatory search warrant.
 {¶ 57} Here, the police stopped Blevins' vehicle solely on the basis of his driving under suspension. They had no reason to believe that a delivery of cocaine had been completed. In addition, there was no evidence in the record that the police actually had set up a controlled buy. Instead, there was testimony that the police did not know where Blevins' vehicle was going when it was stopped. Accordingly, I cannot find that the search of 503 Evans Road falls within the good faith exception to the exclusionary rule set forth in Leon, George, andWilmoth, supra. *Page 29 
 {¶ 58} The trial court and the majority have also commented that a valid search warrant for the property might have been issued without the added complications of the anticipatory aspect. However, such a warrant was not requested and was not issued. Therefore, I believe it is improper to speculate as to whether a search of the residence could have been authorized without the anticipatory qualifications.
 {¶ 59} Finally, while not a reversible error in this case, I would observe that the warrant specifically permitted a nighttime search. The discussion between the judge and Detective Isom was inadequate to justify a nighttime intrusion into the residence. The judge simply asked "you need a nighttime search?" And Detective Isom answered "Yes I do."
 {¶ 60} The record is not clear whether the search of the residence commenced prior to 8:01 p.m., although the stop of Blevins' vehicle occurred at about 7:30 p.m., and this issue was not raised in the motion to suppress and is therefore waived. However, such indifferent treatment of this serious issue should be of concern to all.
 {¶ 61} R.C. 2933.24(A) reads, in part, as follows:
 * * * The command of the warrant shall be that the search be made in the daytime, unless there is urgent necessity for a search in the night, in which case a search in the night may be ordered. *Page 30 
 {¶ 62} Here, there was no inquiry as to the reason why a nighttime search was necessary, and the granting of permission for a nighttime search in this case was arbitrary and unreasonable, and therefore, an abuse of discretion.
[2] Detective Steve Ross, a member of Marion Police Department's MARMET Drug Task Force, testified that he typed the search warrant for Blevins' residence prior to Detective Isom testifying to it. *Page 1